**Not Recommended for Publication or Citation**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 07-CV-385-JBC


WILLIAM STAPLES                                                    PLAINTIFFS

VS:                    **MEMORANDUM OPINION AND ORDER**

STEPHEN DEWALT, Warden, et al.                              DEFENDANTS

* * * *   * * * *   * * * *   * * * *

William Staples and Trevino Brewer, both prisoners then incarcerated in the Federal Medical Center ("FMC") in Lexington, Kentucky, filed this action pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971).

At that time, the plaintiffs did not pay the $350.00 district court filing fee, but each moved to proceed in this case *in forma pauperis*, based upon affidavits of indigency.  As this information was insufficient for qualifying for pauper status under 28 U.S.C. § 1915(a), the Court issued a Deficiency Order requiring that, within 30 days, each would-be plaintiff must provide information as to the amount of cash deposited into his inmate account within the preceding 6 months.  Plaintiff Brewer failed to respond in a timely manner and failed to move for an extension of time in which to do so.  Accordingly, as he was warned in the Court's Deficiency Order, he will be dismissed from this cause of action.  Plaintiff Staples did timely and adequately

respond, however, and the Court has granted him permission to proceed in this case *in forma pauperis*, by separate Order.

The Complaint is now before the Court for initial screening.  28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

In the Court's screening, as with all pleadings submitted by *pro se* litigants, the Complaint is held to less stringent standards than those drafted by attorneys.  *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).  During screening, the allegations in his complaint are taken as true and liberally construed in his favor.  *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  However, the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief.  28 U.S.C. § 1915(e)(2)(B).

## CLAIMS

Plaintiff Staples complains of certain conditions of his confinement which allegedly violate the Eighth and Fourteenth Amendments of the U.S. Constitution.

## RELIEF REQUESTED

Damages are demanded.

## FACTUAL ALLEGATIONS

In the verified Complaint, the original Plaintiffs set out their factual allegations separately.  Because Trevino Brewer will be dismissed from the instant action, the following is a summary or construction of only William Staples' factual allegations.

2

Staples first complains of the medical care provided him, beginning in August of 2006, when he returned to FMC-Lexington from the University of Kentucky Hospital, where a left hip surgery "was not completed." He states that he reported feeling sick and being feverish, but no medical personnel responded. He later complained personally to a doctor, Defendant Rios, and his Counselor, Defendant Childress, about being housed in the general population, distant from the medical unit, despite his being "a medical level four (4)," but to no avail.

Childress is also accused of manipulating information in a computer to force the Plaintiff to work during the month before and the month after his hip surgery, despite his condition. Additionally, Staples contends that at some point in August of 2006, the pain medication which had been prescribed to him was changed so that he received "percucet," despite his records clearly showing that he is allergic to it, and this put his life at risk.

The Plaintiff's hip surgery was purportedly completed on February 20, 2007, and he again complains of his purported lack of care afterwards. Upon his return to the prison, Staples supposedly asked physician assistants if he could go to a medical unit, rather than "the regular unit." They allegedly asked Defendant Dr. Marrero, who, without examining him, said that there was nowhere else for him to go. Feeling sick on February 28th, the Plaintiff saw Dr. Rios to request a move to a medical unit, but this ended in an altercation, with the doctor ordering him out of his office. It was not until April of 2007 that Staples saw this Defendant again, at which time, Rios did

3

correct his pain medication.

Plaintiff's next complaint involves cell furnishings. He alleges that he told Defendant Childress that because of his disabled back and left hip, he "needed a chair to sit on when in his room putting his clothes on and reading" and awaiting an officer's prisoner count. Childress purportedly forced him to relinquish the chair he was using, and later also took down a bulletin board which he was allegedly entitled to have. When Staples asked for a BP-9 form in order to complain about these two issues in the BOP's administrative remedy process, Defendant Childress purportedly refused to give him one. When the Plaintiff wrote a letter to the warden, he alleges, Defendant Dewalt merely told him to speak to his "unit team" before initiating a complaint. That unit team, complains the plaintiff, contained Defendant Childress, against whom the plaintiff here complains.

As his third complaint, Staples alleges that although he had been paying quarterly toward his court-ordered restitution, in conformity with an agreement which he signed with another BOP official, Teri Ward, suddenly Ward and his unit team, including Childress, decided to increase the amount of his payments. When the Plaintiff argued that it was not yet time for his next financial assessment and that he could not afford the proposed larger amount of money, he was placed in "refusal status," a classification which  meant that he lost certain privileges, and he was moved into what is apparently a less desirable living unit, described as a "10 man bus-stop in general population."

4

Finally, Plaintiff complains of a disciplinary proceeding.  He alleges that on September 24, 2007, "because plaintiff had a chair by his bed and a pair of trousers hanging on the locker," Childress wrote an incident report charging him with violating the institution's health and safety regulations.  After Staples could not get a continuance, a hearing was had, in which Plaintiff's due process rights were purportedly denied.  He was found guilty and penalized with two months of commissary restrictions.  Plaintiff contends that he appealed this matter to the highest level of the BOP.  This is the only matter which he claims to have exhausted administratively.

Staples has sought damages and declarations that the Defendants violated his Eighth and Fourteenth Amendment rights and that they failed to follow the institution's own policies and procedures.

## DISCUSSION

Plaintiff attached no exhibits to his original Complaint.  In the Deficiency Order regarding the fee issue, the Court also inquired into his use of the BOP administrative process, as a federal statute on prisoner litigation requires exhaustion of whatever administrative remedies are available.  42 U.S.C. § 1997e.  Moreover, the statute mandates dismissal of claims which have not been exhausted, and the Supreme Court of the United States has ruled that "exhaustion" means "proper exhaustion," *i.e.*, in conformity with the provisions of the administrative scheme, such as meeting any time deadlines.  *Woodford v. Ngo*, 548 U.S. 81, ____, 126 S.Ct. 2378, 2393  (2006).

The administrative remedies available to inmates in BOP institutions are set out in the Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-.19 (1998). Section 542.13(a) demands that within 20 days of the date that the basis for complaint or request arises, an inmate must informally present his complaint to the staff. If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden, in conformity with Section 542.14. If the BOP inmate is not satisfied with the Warden's response, he has two opportunities to have the issue addressed outside the prison. He may appeal (a BP-10) to the BOP's Regional Director, and if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the Office of General Counsel. *See* Section 542.15 (a) - (b).

Under these regulations, a federal prisoner can even start at the Regional level instead of the institutional level, if the matter is sensitive. Section 542.14(d). There are also established response times. Section 542.18. The Warden has 20 days to respond; the Regional Director has 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id*.

Plaintiff has addressed the administrative remedy pre-condition to filing suit in two different ways. In his complaint, he explained that because Childress is his counselor, he is the one who would ordinarily be the starting point for seeking relief through the BOP's administrative remedy. However, Staples explains,

6

> Plaintiff has no administrative remedy available to address the matters complained of, because most of the time it is the counselor in which the plaintiff has the complaint with and they have the discretion as to when you can file a complaint,  how you can file them and on what issues you can file them on, by simply telling that they will not give the plaintiff a complaint form to start a complaint.

Record No. 2,  ¶ B.20.

Later, in response to the Court's December Order inquiring into his use of these administrative procedures, Staples submitted exhibits going to the issue of exhausting this pre-condition.  Record No. 9.  Many of the letters and other prison records which he includes do not fit the requirements of the proper method to achieve exhaustion and are otherwise unhelpful.  However, there are also documents exchanged between the Plaintiff and BOP officials in the administrative remedy process which evidence that Staples was able to get the proper forms and knew the process of appealing to the higher levels of the BOP in order to achieve exhaustion after an initial denial.

An examination of the BOP administrative documents is helpful and the information contained therein fulfills one of the goals of the exhaustion requirement.  *See Brice v. Day*, 604 F.2d 664 (10th Cir.) (exhaustion of administrative remedies should be implemented to prepare a record), *cert. denied*, 444 U.S. 1086 (1980).  The administrative remedy documents are from Administrative Remedies which have been Numbered 419118; 446519; 449854; 467492; and 468769; and there are a number of responses from the warden to Plaintiff on various topics which have no numeric designation.

Thus, there is now in the instant record evidence of Plaintiff's use of the BOP's

administrative remedy program, but the exhaustion requirement demands more than just use. Exhaustion requires the proper use of the administrative procedures (*Woodford*, 126 S.Ct. at 2393), and in the BOP administrative scheme, that means timely appeals and denials of appeals up to and including the BOP's national office.

Plaintiff's evidence suggests that he did not pursue requests to have his chair and bulletin board restored to him. Similarly, despite his claim that he exhausted his appeals of a disciplinary conviction for a Code 317 offense, his attachments show only that he began an appeal of that conviction, not that he pursued the appeal to exhaustion. As to Remedy No. 419118, regarding payments made through the BOP on court-ordered restitution, he may have exhausted, as he alleges that he put his last appeal on this issue in the mail to the BOP's National Office on October 24, 2006, but did not receive a response.

Attached administrative documents actually demonstrate that only one of Plaintiff's claims was exhausted. He attaches the final response in Remedy Number 449854, regarding the Plaintiff's post-surgical after-care in the Spring of 2007. The response from the Administrator of National Inmate Appeals is dated August 14, 2007, and contains that official's conclusion that Staples received appropriate medical after-care.

Whether any of the other of Plaintiff's issues were pursued to exhaustion is not for the Plaintiff to demonstrate at this initial stage, as failure to exhaust is an affirmative defense, which Defendants may raise or waive. *Jones v. Bock*, ____ U.S.

____, ____, 127 S.Ct. 910, 913-15 (2007).  Thus, the Court will not look into the matter further at this time.  However, failure to demonstrate  exhaustion may later be a basis to dismiss any and/or all of the Plaintiff's claims except those raised in Remedy No. 449854.

Several Defendants are entitled to dismissal today, however.   Defendants Gadero, Growse, Leaf, Reese, Chambers, Martinez, and Shawn McCoy are mentioned only in the complaint and only  in the allegations of the original co-plaintiff, Trevino Brewer.  Because Brewer will be dismissed from this cause of action for failure to prosecute his cause, these defendants are entitled to dismissal of all claims against them.

Additionally, a defendant may be held answerable only for his or her own unconstitutional acts, and defendants without personal involvement or participation in the acts must be dismissed.  *Rizzo v. Goode*, 423 U.S. 362 (1976).  To state a cognizable claim, a  plaintiff must allege that each defendant personally participated in unconstitutional acts which violated his rights, as a *Bivens* defendant can be held liable only if he acted knowingly and participated in the unconstitutional conduct. *Monell v. Dep't of Social Serv.*, 436 U.S. 658 (1978).

The Plaintiff describes specific actions/inaction by Defendants Rios, Marrero, Childress and Ward, but he does not assert that Warden Dewalt or BOP Director Lappin were personally involved in any complained-of action.  *See Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988); *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir.

9

1979).  The Plaintiff cannot recover against these persons on a *respondeat superior* theory of liability.  *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984).

For a supervisor to be found liable, a plaintiff must allege that the supervisor condoned, encouraged or participated in the alleged misconduct.  *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), *cert. denied*, 110 S. Ct. 2173 (1990).   Plaintiff must show "'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'"  *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d at 421).  The instant Plaintiff has failed to do so with regard to these two defendants, and therefore, Dewalt and Lappin, too, are entitled to dismissal.

The Plaintiff recently submitted a motion to amend his complaint with what the Court construes as three additional claims.  Record No. 11, filed May 7, 2008.  In an attached tendered Complaint, Staples presents two of them.  He alleges that he was attacked by another inmate on October 29, 2007, before he left the Lexington prison, and that later the BOP lost certain personal property during his January-February of 2008 move from Lexington to his current BOP facility, in Leavenworth, Kansas.  Plaintiff contends that he complained about the assault and lost property by filing a tort claim with the BOP, but the claim was denied on or about April 9, 2008.

Staples urges the Court to permit these amendments in this case on the grounds that "[t]he defendants are the same, plaintiff is the same, the pleadings are the same,

10

it would save the court time, effort . . . and would save the indigent petitioner the unnecessary extra filing fee of each case."  With regard to the two events giving rise to his tort claims, however, neither the defendants nor the pleadings herein are the same.

Under the Federal Tort Claims Act ("FTCA"), the United States is the only proper defendant, and failure to name the United States as defendant in an FTCA suit may result in a fatal lack of jurisdiction.  *Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990); 28 U.S.C. §§ 1346(b), 2401(b), 2679(a).  Further, FTCA pleadings must not be based upon intentional acts, but on claims of negligence, the U.S. government having consented only to tort actions  "for money damages,...for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment...."  28 U.S.C. § 1346(b).

The Court construes Staples' third claim to be a challenge to three incident reports which were "filed earlier in the month of April."  He does not allege whether he was convicted, suffered a punishment, or appealed the outcome(s), however. Moreover, the description of the BOP administrative remedy scheme makes it clear that the appeal process for such matters is 4-tiered  and could not have been already completed by the following month, May, when he filed this motion to amend .  Although *Jones v. Bock*, ____ U.S. ____, ____, 127 S.Ct. 910, 913-15 (2007),  states that prisoners have no obligation to plead, allege, or otherwise demonstrate exhaustion in their complaints (*Id*. at 913-15), *Jones* does not forbid a court from dismissing a

11

complaint pursuant to § 1997e(a), if it is clear from the face of a prisoner's complaint that he has not exhausted all administrative remedies available to him. *Id*. at 920-21. Further, no lawsuit for damages is even possible unless the disciplinary decision has been invalidated. *See Heck v. Humphrey*, 512 U.S. 477, 480 (1994).

Plaintiff's motion to make these amendments rests upon Federal Rule of Civil Procedure15, ujnder which  complaints should be freely granted, unless such amendment would be futile – that is, without any chance of success. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). However, a  court may deny a motion to amend where the complaint, as amended, could not withstand a motion to dismiss.  *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980).  Because the Plaintiff's three additional claims would not survive such a motion, for the reasons stated above, his motion to amend will be denied.

Accordingly, the court being advised, **IT IS ORDERED** as follows:

(1)    Plaintiff Trevino Brewer's Motion for Leave to Proceed *in forma pauperis* [Record No. 3] is **DENIED**, for his failure to obey an earlier Order of the Court; Brewer is **DISMISSED** and **STRICKEN** as a Plaintiff herein; and the Clerk of the Court shall **STRIKE** his name in the docket and caption of this case.

(2)    Plaintiff's Motion to Amend [Record No. 11] is **DENIED**.

(3)    The following named defendants are **DISMISSED**, *sua sponte*, without prejudice: Stephen Dewalt; Dr. Gadero; Dr. Growse; Mr. Leaf; Constance Reese; Dr. Anthony Chambers; Roberto Martinez; Shawn McCoy; and Harley Lappin.

(4)    The Lexington Clerk shall prepare and issue separate summons for FMC-Lexington's Dr. Rios, Dr. Marrero, Mr. Childress, and Teri Ward, one summons for each of these defendants in his or her official capacity and a separate summons for each in his or her individual capacity.

(5)    In addition to a separate summons for each defendant individually and officially, the Divisional Clerk shall also prepare three sets of copies of the summonses, marking one set to be served on the United States Attorney General in Washington, D.C., one set to be served on the United States Attorney for the Eastern District of Kentucky, and one set to be served on the Central Office of the Bureau of Prisons in Washington, D.C.

(6)    The Clerk shall also prepare a "service packet" to accompany each summons and each of the three sets of copies of the summonses; each service packet shall consist of the following:

a.    the necessary forms for service pursuant to Fed.R.Civ.P. 4;
b.    the complaint [Record No. 2];
c.    the order granting plaintiff *in forma pauperis* status [Record No. 10];
d.    any required USM Forms 285; and
e.    this Order.

If insufficient information exists to sufficiently or effectively complete any summons or other document regarding any defendant, the Clerk shall promptly make an entry on the docket stating the reason that the Clerk was not able to do so.

(7)    After the Lexington Clerk's office has prepared the summonses and service packets, a Deputy Clerk in the Lexington Clerk's office shall hand-deliver said

13

documents to the United States Marshal's ("USM") Office  in Lexington, Kentucky.

(8)    The Lexington Deputy Clerk making the delivery referenced in paragraph (7) to the USM  Office shall obtain from the Marshal a receipt for the hand-delivered documents, which receipt shall be entered  into the instant record by the Deputy Clerk.

(9)    The United States Marshal shall make service of process on FMC-Lexington's Dr. Rios, Dr. Marrero, Mr. Childress, and Teri Ward, in their official capacities, by serving them with (a) the summons made out to them in their official capacity and (b) a service packet.  Said service may be by certified mail, return receipt requested, or by personal service on the named official defendant, at the option of the USM.

(10)    The United States Marshal shall make service of process on Dr. Rios, Dr. Marrero, Mr. Childress, and Teri Ward, in their individual capacities, by serving them with (a) the summons made out to them in their individual capacity and (b) a service packet.  Said service shall be by personal service on each individual defendant.

(11)    The United States Marshal shall also make service of copies of (a) all of the summonses made out to the named defendants in their official and individual capacities and (b) a service packet on the United States Attorney General in Washington, D.C.; on the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky; and on the Central Office of the Bureau of Prisons in Washington, D.C.  Said service may be by certified mail, return receipt requested, or by personal service, at the option of the USM.

(12)    The USM Office is responsible for ensuring that each defendant is

14

successfully served with process.  In the event that an attempt at service upon any defendant is unsuccessful, the USM Office shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(13)   Within 40 days of the date of entry of this Order, the USM Office shall send to the Divisional Clerk's Office, a Service Report, which a Divisional Deputy Clerk shall file in the record and which states whether service has been accomplished with respect to each identified defendant.

a.   For each defendant served by certified mail, the Service Report shall include:

i.   a copy of the green card showing proof of service; or

ii.   a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

b.   For each defendant personally served, the Service Report shall indicate:

i.   that the defendant was successfully served personally, or

ii.   a statement explaining what efforts are being taken to locate the defendant and accomplish personal service.

(14)   The plaintiff shall immediately inform the Clerk of the Court of any change in his current mailing address.  Failure to notify the Clerk of any address changes may result in a dismissal of this case.

(15)   For every further pleading or other document he or she wishes to submit for consideration by the court, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy

15

of the document was mailed to each defendant or counsel.  If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

(16)   The plaintiff must communicate with the Court **solely** through notices or motions filed with the Clerk's Office.  **The Court will disregard correspondence sent directly to a  judge or magistrate judge.**

Signed on  May 28, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY