**Not Recommended for Publication or Citation**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-CV-385-JBC

WILLIAM STAPLES                                                              PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

STEPHEN DEWALT, Warden, et al.                                 DEFENDANTS

**** **** **** ****

This matter is before the court on the defendants' motions to dismiss [R. 29, 37], which the court will grant because each of the plaintiff's claims either lacks merit, was not exhausted administratively, or is not within the court's jurisdiction.

William Staples and Trevino Brewer were prisoners in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated in the Federal Medical Center in Lexington, Kentucky, on November 19, 2008, when they submitted the instant *pro se* civil complaint, pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971). They complained of certain conditions at the Federal Medical Center ("FMC"), primarily the quality of their medical care, and they demanded damages.

After screening the complaint, the court dismissed certain claims, several defendants, and also co-plaintiff Trevino Brewer, for his failure to comply with early orders of this court. The court found it unclear whether some claims had been exhausted through the administrative remedy process. However, the court directed that summons issue for

FMC-Lexington's Dr. Rios; Dr. Marrero; a counselor there named Childress; and Unit Manager Teri Ward, both individually and in their official capacities.

Since that time, Staples has been transferred to the United States Penitentiary in Leavenworth, Kansas, and he has prosecuted his case from there.  On December 8, 2008, his motion to amend his complaint with FTCA claims was granted.  The defendants responded to the original complaint with a motion to dismiss or for summary judgment, pursuant to Federal Rules of Civil Procedure 12(b) and 56(c), and have now responded to the amendments with a similar motion to dismiss.

## EXHAUSTION ISSUE

Prisoners must exhaust whatever administrative remedies are available.  42 U.S.C. § 1997e.  Moreover, the court must dismiss claims which have not been exhausted, and "exhaustion" means "proper exhaustion," in conformity with the requirements of the administrative scheme, such as meeting any time deadlines.  *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386  (2006).

The administrative remedies available to inmates confined in Bureau of Prisons institutions are set out in the Administrative Remedy Program found at 28 C.F.R. §§ 542.10-.19 (1998).  Section 542.13(a) demands that within 20 days of the date that the basis for complaint or request arises, an inmate must informally present his complaint to the staff.  If the inmate cannot informally resolve his complaint, then he may file a formal written request (a BP-9 form) to the Warden, in conformity with Section 542.14.  If the BOP inmate is not satisfied with the Warden's response, he has two opportunities to have the issue addressed outside the prison.  He may appeal (a BP-10) to the BOP's Regional

2

Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) to the Office of General Counsel.  *See* Section 542.15 (a) - (b).

A federal prisoner can even start at the Regional level, instead of the institutional level, if the matter is sensitive.  Section 542.14(d).  There are also established response times.  Section 542.18.  The Warden has 20 days to respond; the Regional Director has 30 days; and General Counsel, 40 days.  Only one extension of time of 20-30 days, in writing, is permitted the agency.  "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  *Id*.

In the order directing the issuance of summons in this case, the court wrote that it would not dismiss a claim then, unless the claim was clearly unexhausted, in conformity with *Jones v. Bock*, 549 U.S. 199, 215 (2007).  "However, failure to demonstrate exhaustion may later be a basis to dismiss any and/or all of the Plaintiff's claims . . . ."  Record No. 13.

### Exhaustion of Staples' Claims

Staples claims that the defendants have violated his rights under the Eighth and Fourteenth Amendments.  The defendants respond by claiming that Staples  has failed to exhaust several of his claims and that those which were exhausted do not state a cognizable Constitutional claim under either Amendment.  The court now considers the Plaintiff's claims and the BOP personnel's defenses, one by one.

**1. Medical care**.

Staples's initial complaint focused on the medical care provided him, beginning in

3

August of 2006, when he returned to FMC-Lexington from the University of Kentucky Medical Center ("UKMC"), where a left-hip surgery "was not completed," and six months later, after his February 20, 2007, total hip replacement and return to the prison on February 24, 2007.

Plaintiff states that both times, he was placed back in his regular unit, although he was feeling sick and feverish, and as a "a medical level four (4)" inmate, he should have been in the F-4 nursing unit.  Because of his location, he claims, no medical personnel responded to his demands when the wound ruptured in August of 2006 and he had difficulty getting about after the February of 2007 surgery.  Plaintiff also contends that at some point in August of 2006, the pain medication which had been prescribed to him was changed by the defendants so that he received a drug to which he was allergic, despite his records clearly showing that he is allergic to ibuprofen, tylenol, percocet, and vicoden.

Defendants admit that Plaintiff has exhausted the medical-care complaints through the BOP's administrative remedy process, only with regard to his second post-operative period, after his February 2007 hip replacement, including the complaint that he should have been placed in the nursing unit instead of a regular cell.  Staples attached to his complaint the final response in Remedy Number 449854, regarding his surgical after-care in the Spring of 2007.  The response from the Administrator of National Inmate Appeals is dated August 14, 2007, and contains that official's conclusion that Staples received appropriate post-operative care.

As this claim was pursued to exhaustion, the court will address it below.

**2.  Cell furnishings**

The plaintiff also complains that his counselor, Defendant Childress, manipulated

4

computer information in order to force him to work during the month before and the month after one of his surgeries, despite his condition.  He also alleges that although he told Defendant Childress that he "needed a chair to sit on when in his room putting his clothes on and reading" and other purposes, Childress forced him to relinquish a chair which he had pulled into his cell, later also took down Staples' bulletin board, and brought a disciplinary action against him.

To the extent that the plaintiff complains of his work assignments and his need for these furnishings, he has not supplied documents showing that he pursued these claims administratively.  Therefore, the court will dismiss them for failure to exhaust.  *See* 42 U.S.C. § 1997e(a).  However, complaints about the disciplinary action will remain to be discussed below.

### 3.  Access to administrative remedy forms

When Staples asked for a BP-9 form in order to complain about the confiscation of the chair and bulletin board via the BOP's administrative remedy process, Defendant Childress purportedly refused to give him one.  When the plaintiff wrote a letter about it to the warden, he alleges, Defendant Dewalt merely told him to speak to his "unit team" before initiating a complaint.  But according to Staples, Childress is part of the unit team.

Staples did not pursue this complaint through the BOP's administrative remedy scheme prior to filing suit, and therefore, litigation of this claim is barred by 42 U.S.C. § 1997e(a).  Prison forms for initiating a grievance were easily available, and Staples had the ability to get and use them on the topics he has raised.  The Court cannot find any basis to excuse Staples' failure to complete the administrative process on this claim.

**4.  Disciplinary proceeding**

The plaintiff alleges that on September 24, 2007, "because plaintiff had a chair by his bed and a pair of trousers hanging on the locker," Childress wrote an incident report charging him with violating the institution's health and safety regulations.  After a hearing in which Staples's due process rights were purportedly denied, the Unit Disciplinary Committee ("UDC") found him guilty as charged and penalized him with two months of commissary restrictions.

Staples provides a copy of the decision affirming his conviction at the highest level of appeal, the BOP's National Office, thus demonstrating his exhaustion of this matter, Administrative Remedy No. 468769.  The defendants agree that the conviction and punishment have been appealed to exhaustion.  Accordingly, the court will address this claim below.

**5.  The Inmate Financial Responsibility Program**

Staples alleges that although he had been paying quarterly toward his court-ordered restitution, in conformity with an Inmate Financial Responsibility Program ("IFRP") agreement which he had signed at the prison at an earlier time, Defendant Teri Ward and Staples's unit team, including Childress, decided to increase the amount of his payments. When Staples argued that it was not yet time for his next financial assessment and that he would not pay the higher amount because he could not afford it, he was placed in "refusal status," a classification which  meant that he lost certain privileges.

Because the plaintiff failed to exhaust this matter, it, too, must be dismissed. Staples started to pursue a grievance about this, but he did not finish the process.

6

Therefore, this claim will also be dismissed.

**6. Claims in the Amended complaint**

After summons had issued on his *Bivens* claims, on August 15, 2008, the plaintiff moved to amend the complaint with three more claims. The court has presumed that the three claims filed in the amended complaint were meant to be included as claims under both *Bivens* and the Federal Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2672, *et seq*.

In the tendered amended complaint, Staples related an incident occurring on October 29, 2007, when he was attacked by another inmate who, Staples contends, was "mentally retarded" and should not have been housed with the general population; he discovered at that time that emergency call buttons are not located throughout the facility for him to summon help; and in February of 2008, the BOP lost part of his property during his transfer to Leavenworth. The BOP denied his claims via a letter dated April 9, 2008, thus exhausting the FTCA's only administrative step.

To the extent the amended claims are intended to be *Bivens* claims, they are unexhausted through BOP's four-step process. Staples exhausted the FTCA's one-step administrative process, rather than the above-described 4-step BOP process. Plaintiff could have, but has not, pursued the BOP's above-described administrative remedy process. Thus, he has failed to exhaust the pre-filing requirement for *Bivens* claims.

Additionally, it is too late to do so now, as *Bivens* claims in Kentucky have a one-year statute of limitations. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)) (§ 1983 actions

in Kentucky are limited by the one-year statute of limitations found in § 413.140(1)(a)).

Therefore, the court will dismiss the amended complaint's *Bivens* claims.

As to whether these incidents can proceed as negligence claims under the FTCA,

28 U.S.C. §§ 2671-2680,[1] the United States points out that the FTCA has its own statute

of limitations and exhaustion requirements.  Before Staples can maintain this action under

the FTCA, he must have first exhausted the FTCA's administrative remedies by filing his

claim with the regional office of the Bureau of Prisons in the region where the tort

happened, within two years after the claim accrued.  *See* 28 U.S.C. § 2675(a); 28 C.F.R.

§ 543.30 *et seq.*  Filing a standard Form 95 claim with the BOP satisfies this presentment

requirement.  *See also Conn v. United States*, 867 F.2d 916, 918 (6th Cir. 1989).  Staples'

letter of denial from the BOP shows that he has exhausted this process.

There are two time limitations to consider under the FTCA.  28 U.S.C. § 2401

provides in pertinent part as follows:

> . . .
> (b)      A tort claim against the United States shall be forever barred
> unless it is presented in writing to the appropriate Federal agency within *two
> years after such claim accrues or unless action is begun within six months
> after the date of mailing, by certified or registered mail, of notice of final
> denial of the claim* by the agency to which it was presented.

*Id.* (emphasis added).  Staples was timely with regard to the initial limitations period, having

presented his three claims to the agency (the BOP) on February 28, 2008, shortly after and

well within 2 years of the events occurring on October 29, 2007, and in February of 2008.

As to the six-month limitation period between the BOP's denial of the claims and the

plaintiff's  filing of a civil action, however, the BOP argues that after receiving the denial

---

[1]  The FTCA is a limited waiver of sovereign immunity and authorizes suits against the United
States for money damages for personal injury resulting from the negligent or wrongful acts or omissions
of United States employees acting within the scope of employment.  *See* 28 U.S.C. § 2674.

letter dated April 9, 2008, the plaintiff waited for 8 months, until December of 2008, to submit these claims to court in an amended complaint.  The record supports the United States' time frame only facially, however.  The docket shows that the amended complaint was filed on December 8, 2008, but that was not its first appearance in this record.

Plaintiff first presented the amended complaint as the attachment to his motion to amend the original complaint, and that motion to amend was filed on August 15, 2008, only four months after the FTCA denial letter.  The December 8, 2008, date upon which the government relies is when the court granted the motion to amend and the amended complaint was ordered filed as an amendment to the original complaint.

Therefore, the court concludes that the three FTCA claims were timely exhausted and timely filed in court by the plaintiff.  Accordingly, these claims will be among those discussed below.

### DISCUSSION OF EXHAUSTED CLAIMS

#### Official-Capacity Claims

All of the official-capacity claims will be dismissed.  When damages are sought against federal employees in their official capacities, the damages in essence are sought against the United States, and such claims cannot be maintained because the United States is protected by sovereign immunity.  *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975).  Therefore, "a *Bivens* claim [for damages] may not be asserted against a federal officer in his official capacity."  *Berger, et al., v. Pierce, et al.*, 933 F.2d 393, 397 (6th Cir. 1991) (citing *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984); *see also Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Butz v. Economou*, 438 U.S. 478, 512-14 (1978)).

#### Eighth Amendment Claims

9

The court will dismiss Staples's Eighth Amendment claim because he cannot establish deliberate indifference to his serious medical needs.

To establish a right to relief in a civil rights claim under 28 U.S.C. § 1331, Staples must prove two essential elements.  He must show, first, that he has been deprived of rights secured by the U.S. Constitution or laws of the United States and, second, that the defendants allegedly depriving him of the rights acted under color of federal law.  *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 397 (1971).

With regard to his medical care, Staples is claiming that the defendants exhibited deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights.  "In order to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The concept of deliberate indifference has been equated with wantonness and with acts that are taken with criminal recklessness.  *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994) (citing *Farmer v. Brennan*, 114 S. Ct. 1970 (1994)).  Liability attaches only when the plaintiff "demonstrate[s] deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994) (citation omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause").

10

When a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Staples was feeling sick and feverish on February 24, 2007, after returning from his February 20th surgery, and therefore, should have been placed in the nursing unit, rather being placed back into his living unit.[2] He complains that Dr. Marrero made the decision to keep him in his usual unit and but he states that he also complained to Defendants Rios and Childress, who concurred with the decision to return him to his unit. Plaintiff alleges that 4 days later, on February 28, 2007, he went to Dr. Rios to request a move to a medical unit, but this ended in an altercation, with the doctor ordering him out of his office.

Plaintiff also contends that his pain prescription was changed so that he received a drug to which he was allergic, despite his records clearly showing that he is allergic to ibuprofen, tylenol, percocet, and vicoden. He provides medical records from November of 2005 and August 1, 2006, showing these allergies as being reported by him. He claims that it was not until April of 2007, that Dr. Rios corrected his pain medication.

This is a classic case of a difference of opinion between a patient and his medical care provider. Staples has claimed that he should have received more medical attention, in a different way, in another unit, for a few post-operative days. He does not claim that

---

[2] The court construes the facts most favorably toward Staples, as it must. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

11

he was ignored or neglected or that he received no medical care.  He does not deny that he received medical care; he just claims he should have been treated differently.

There is no genuine issue of material fact as to whether the defendants were deliberately indifferent to Staples' serious medical needs, and they are entitled to a judgment as a matter of law.[3]   A court will not second-guess the judgment of medical professionals who make diagnoses and decisions about treatment.  *Estelle*, 429 U.S. at 107.  A court must

> distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Westlake v. Lucas*, 537 F.2d at 860.  Summary judgment will be entered in favor of the defendants on Plaintiff's medical care claims.

## Fourteenth Amendment Claims

Plaintiff's Fourteenth Amendment claims apparently spring from the disciplinary proceeding in which he was convicted of a safety/sanitation offense.  Staples recites that he did not receive a copy of the charge within 24 hours, he was not granted a continuance to finish a written statement or to obtain witnesses, the UDC making the decision was not impartial, and he did not receive a copy of the decision.  As to the evidence against him, Staples refused, then and now, to believe that Childress's motive was to provide clear walkways and other spaces in cells for safety reasons.

---

[3]  Although the defendants filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court construes them as motions for summary judgment because it has considered the plaintiff's affidavit and medical records.  *See Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir. 1999).  Thus the standards of Fed.R.Civ.P. 56 prevail.

A prisoner is entitled to certain procedural due process protections if he is faced with either the loss of GCT or a penalty which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).   When the duration of a prisoner's incarceration or an atypical hardship is at issue, only then does the Supreme Court require the minimal due process protections set out in *Wolff v. McDonnell,* 418 U.S. 539, 564-65 (1974).

Since the only penalty at issue here was a two-month period of commissary restrictions, none of the Constitutional process was due.   Even so, Plaintiff had similar safeguards nonetheless.   He had a written notice the day before, a hearing, and a witness whom he had requested.   Staples' hearing was before a UDC who decided against him and imposed a sanction so minimal that neither a Disciplinary Hearing Officer nor a full Due Process hearing was required.   Although Plaintiff claims that the UDC was not impartial, he offers no facts on which to base such a conclusory statement.   Nor was he entitled to a last-minute continuance to arrange a defense.   Even were Staples denied constitutionally required process, Plaintiff points to no prejudice which he suffered because he did not receive it.

To the extent that Plaintiff means to assert claims of substantive due process or arbitrariness in the decision made against him, a disciplinary conviction must be upheld as consistent with due process so long as there is "some evidence" to support the decision. *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).   Staples does not deny that without authorization, he had moved a chair from another room into his cell; he even admits that Childress had warned him about removing chairs from the television room.   Record No. 45 at 2; Record No. 42, attached exhibit.   Childress was responsible for the safety and

13

security of the pertinent environment, and he could conclude that security required certain placement of chairs.  Thus, the record contains some evidence to support the decision. Therefore, the decision will stand.

### FTCA Claims

On his FTCA claim form asserting negligence, the Plaintiff has reported that on October 29, 2007, a "mentally retarded" inmate came into the card room where Plaintiff was watching TV and turned the TV.  Staples writes that the assault occurred "[u]pon my attempt to explain . . . that he cannot just come in and turn the TV."  Upon the Plaintiff's having taken it upon himself to instruct the other prisoner, the inmate allegedly pushed him and struck him "several times in the head area."  Staples claimed that the BOP violated his constitutional rights by housing a mentally retarded inmate with other prisoners in the general prison population, and that the BOP was negligent by having no emergency call buttons in that area of the prison for summoning help.

On the same form, Staples also complained that after he left the FMC-Lexington, for his transfer to Leavenworth, the BOP lost certain of his property, which he lists.  He sought more than $4,000,000.00 for the attack on his person and $193.00 for the loss of his property.  The FTCA permits certain negligence suits against the United States, but not this one.  BOP officers are exempt from liability for lost or destroyed goods of prisoners. "Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement officers."  *Ali v. Federal Bureau of Prisons*, ___ U.S. ___, ___, 128 S.Ct. 831, 840 (January 22, 2008).

Staples's FTCA claim for the loss of his personal property is barred by 28 U.S.C. § 2680(c).  This court thus lacks subject-matter jurisdiction to decide the loss-of-property

claim, and the BOP is entitled to summary judgment on this claim as a matter of law.

Staples's remaining negligence claim – his alleged beating at the hands of a "mentally retarded" inmate in an area without emergency call buttons – will also be dismissed for lack of subject-matter jurisdiction.  Staples is, essentially, arguing that the BOP was negligent in failing to provide a safe and secure environment by failing to isolate mentally retarded inmates from the general prison population and by failing to have emergency call buttons in a common area.  Staples bears the burden of establishing that such claims are within this court's jurisdiction – that is, that the FTCA permits his making such claims – and he has failed to carry this burden.

The FTCA, while waiving the sovereign immunity of the United States to a certain extent, does not permit such an action.  One exception to the FTCA's waiver of sovereign immunity is the "discretionary function exception" in 28 U.S.C. § 2680(a).   This exception applies to situations involving an element of judgment or choice and which  is the kind of judgment or choice that the discretionary-function exception was designed to shield. *United States v. Gaubert*, 499 U.S. 315, 323 (1991).  Because the housing of inmates and the placement of emergency call buttons in its facilities meet both requirements, the discretionary-function exception applies to this security claim.  *Montez v. Hearlson*, 359 F.3d 392 (6th Cir. 2004).

Therefore, this court lacks FTCA subject-matter jurisdiction over these prison safety and classification claims.  *See, e.g., Cottage v. United States*, 2007 WL 1101245 (N.D. Ohio 2007) (not reported) (no evidence guards were aware of any specific threat to prisoner's safety and application of the discretionary function resulted in dismissal for lack of subject-matter jurisdiction); *Lyons v. United States*, 2007 WL 4553970 (N.D. Ohio 2007)

15

(not reported) (claim for negligence in classifying and separation of inmates was barred under the discretionary function exemption).

### Claims Against Teri Ward

In the last of Plaintiff's pleadings, he suggests that since Defendant Unit Manager Teri Ward has not offered a declaration, then he, Staples, is entitled to judgment against her.  The Court notes that the allegations against Ward relate to her role in the IFRP claim, a claim which was never exhausted and which is now time-barred.  While it is true that she did not submit an affidavit in this case, she has responded to the claims in this action, by counsel.  Plaintiff is not entitled to judgment against Ward in his favor.  Rather, she is entitled to dismissal from this lawsuit.

### CONCLUSION

Accordingly, the court being advised, **IT IS ORDERED** as follows:

(1)    With regard to the defendants' first dispositive motion [Record No. 29], summary judgment is **GRANTED** on Plaintiff's Constitutional claims involving his medical care and disciplinary conviction of September 25, 2007; and dismissal is **GRANTED** on Plaintiff's Constitutional claims involving his cell furnishings, access to administrative remedies, and the Inmate Financial Responsibility Act.

(2)    Defendants' later motion to dismiss [Record No. 43] is **GRANTED** on the *Bivens* and negligence claims contained in Plaintiff's amended complaint.

(3)    Defendants' motion to strike [Record No. 41] is **DENIED**, the court having read the pleading.

(4)    Plaintiff's motion for an order directing certain actions of persons in Kansas [Record No. 47]  is **DENIED**, as the plaintiff fails to state a claim and this court has no

16

personal jurisdiction.

(5) This action is **DISMISSED** and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

Signed on  May 27, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY